There is an overriding legal issue which, if this court decides in our favor, should dispose of the matter altogether, and that is whether a private entity that obtains a permit to hold an event in a public park has the right to control the message at that event. And your authority for that would be Hurley? That's correct. And that was a parade? That's correct. And they were seeking to be admitted to the parade, carry a banner, be an integral part thereof? They were seeking to participate in the parade, that's correct. And the analysis, very extensively, was that there would be a mistaken impression that the parade organizers would be endorsing that message? I don't think that's what the Supreme Court said, Your Honor. I think the Supreme Court said that they had the right to control the message that they chose to convey at the event. I don't believe the Supreme Court talked about how people watching the parade would have perceived it. And if you combine – and the thing I need to say about Hurley is the reason that I think it leaves any question open at all is that the group that wanted to participate in the parade was asserting a right under state law and not its own First Amendment rights. So what we have in this case is a question of the dueling First Amendment rights of the permit holders and Mr. Gathwright that hasn't been entirely squarely addressed. Well, just to put you on notice as to why I think Hurley did at least take that into account, picking one selection without deciding the precise significance of the likelihood of misattribution, it nonetheless becomes clear that in the context of an expressive parade, as with a protest march, the parade's overall message is distilled from the individual presentations along the way, and each unit's expression is perceived by spectators as part of the whole. That theme is quite articulate throughout the rest of the opinion. Now, that's not the whole grounding of the opinion, I would agree, but it certainly does seem to bear on how one would perceive in the context of the case you're presenting whether Mr. Gathwright would be perceived by observers, and maybe he would be. But if you're not prepared to argue that point, then I'm not going to push it. What I want to make sure that I clearly articulate is that I believe that if you read that case as a whole, and they left that open, even from the portion that you just read, they don't decide the significance of it. They say they're not deciding the significance of it. The case does stand for the proposition that the speaker at a permitted event has the right to control the message, including what to say and what not to say. It is our position that the distinction between a parade and a public event, and the distinction that the court here tried to draw between who's a participant and who's an attendee, is largely irrelevant. It's a distinction without a difference, in that the message that each of these events was trying to convey was diluted by the requirement that they allow Mr. Gathwright to participate in their event by haranguing their customers with the message that was contrary to what they wanted to have at their event. If that is not the case, the injunction is nonetheless too broad. It's an abuse of discretion. What the court said is that these event permit holders don't have the right to prohibit disruptive conduct at their events unless it rises to the level of some violation of some other duly enacted line. We submit that's simply not correct. That is, stated as best it can be stated for Mr. Gathwright, there is a conflict in the evidence as to whether his conduct was or was not disruptive at these events. We have evidence from all of the event holders that it was in fact disruptive. And is there an ordinance that would allow separate or part of this particular ordinance? Is there some other ordinance that could be, well this wasn't even an ordinance, but in any event, is there no arsenal, no weapon in the city's arsenal of nuisance or disorderly conduct that would allow, that would itself survive First Amendment constraints I realize, that would allow them to address truly disruptive behavior? Well, my point is... The injunction seems to express the contemplation that there is. Well, no, the injunction says we can't do anything unless there is. Outside of the unreasonable interference ordinance, which I will touch on time permitting briefly, and I meant to mention I'm going to try to reserve a few minutes for rebuttal, but I realize I'm going to need to answer your question. But for that unreasonable interference ordinance, depending on what the person is doing under the circumstances, it may or may not rise to the level of a violation of some freestanding law. But under our traditional First Amendment analysis, even with speech in a public forum, we have the right, the government has the right to impose reasonable time, manner, and place limitations on the exercise of free speech, and we don't have to make it criminal in order to do it. In fact, we should do it in as little intrusive a way as we can. So it has to be on a case-by-case basis that if you have conduct that is actually disrupting an event, whether or not it violates some freestanding of law, there has to be a way to permissibly deal with that conduct. How about if it was permissibly dealt with by some government official rather than by a permit holder? Well, if it's not dealt with by the government, then it's not state action and there's no 1983 claim. So they have to have some claim that the government has done something before there's any First Amendment violation at all. But the government here has kind of authorized the individual permit holder to act, hasn't it? Well, what we've tried to do is two things. I have to separate the world into before the 2004 injunction and after the 2004 injunction. Before the 2004 injunction, we took the position, which we continue to assert here, that the permit holder has the right to determine the contents of the message at its event. And that was enough for it to say, we don't want this message at our event, and we were duty-bound to honor those decisions. And in fact, if we're right about that, that's the narrow way for us to deal with that, because then we're not making the judgment about what is an acceptable message and what's not. We're only going to enforce that which the person who has the right to make that determination has determined to be unacceptable and has determined they want to do something about. So if we are right, as I submit we are, on the right of the permittee to control the message, then what we were doing was entirely appropriate. If we're wrong about that, and that brings us to the post-2004 era, then the question is, well, what limitations can we help impose in order to avoid undue disruption of these events in the parks? And in preventing us from dealing on the ground with disruptive conduct that doesn't, in fact, rise to the level of a freestanding crime, the judge went too far. He abused his discretion. We have to be able to, on a case-by-case basis, deal with those things. And your point that not only Mr. Gathright or Reverend Gathright, but the permittees have free speech rights and free speech involves also being heard without being disrupted short of disorderly conduct. That's correct. Thank you. That is my point entirely. And the way that we particularly try to accommodate this I understood your first position being that the permittee could decide for whatever reason to remove Mr. Gathright, regardless, whatever its motivation was, to keep him away. That is our first position is that when we give Then your fallback position is, okay, then if there has to be some balancing here, then who gets to make that decision? Well, the way it has And by what criteria? The way it happens on the ground is that the police, in consultation with the complainants, the people who are putting on the event, try to work out a reasonable accommodation for both parties. What happened at the bite event is illustrative. At the bite event, Mr. Gathright was standing in the middle of the crowd, screaming and hollering. And the event organizers asked the police to help them have him move to a more suitable area. And there was no city ordinance that gave them authority to do that? Well, the judge had invalidated. No, he hadn't at that point. In response to that, he invalidated. There was a provision of their permit. Take away the injunction. I just want to know, under your secondary regime, that allows some right that doesn't give unfettered discretion to the permittees to do it. Is there, in that circumstance, where he's standing in the middle of the crowd screaming and disrupting the speakers, is there no valid ordinance, in your opinion, that would give the police authority the basis to remove him from the crowd? There is, and we asserted it. And that is the ordinance that provides that it's an offense for any person to fail or refuse to obey a reasonable direction of a park officer. That is the ordinance under which Mr. Gathright was cited at the bite event. And it is our position that when faced with these on-the-ground situations, we expect the police to have to make these reasonable determinations of how to accommodate these rights. How is it that the injunction prohibits doing that? Because the modification of the injunction expressly said that we could not require Mr. Gathright to go to other areas. Even if he was disrupting? That's correct. Even if he's screaming and yelling? That's correct. Unless he violated some freestanding provision of law, there is nothing that we were permitted to do under the injunction. That's why the injunction is an abuse of discretion. Somebody was standing, and we have the Skokie case, an infamous example of warring conflicts. We have the Nazis parade. Let's suppose the city grants a permit to a bunch of Nazi skinheads to have their demonstration, their meeting, if you will, in the city park. And the Jewish community peacefully is standing in the crowd, but with stars of David on or some symbolization of peaceful, private protest. Under your first construct, I take it you would say that the Nazi organization could expel those, keep those peaceful folks out. I believe that it is the law, as expressed by the Supreme Court, that under those circumstances we might be required to have the counter speakers speak from adjacent areas outside the actual permit areas. I believe that is the law. But they couldn't stand as spectators listening to the speeches. They could be excluded from the vicinity of the speaker, the Nazi speaker. As I read Hurley, I believe that is what the Supreme Court said. That would be the first position. That is correct. then on a lesser, where you have some authority, then they could stay there, and then they would have to do what before the Nazis could remove the Jewish protesters? If it was an unreasonable disruption of the event, then if it prohibited, if it amounted essentially arguably to something approaching a heckler's veto, it prevented the permittee from doing what he wanted to do, then we would have an obligation to separate them. How do you square your first position with the Mahoney case where people are holding signs as the parade goes by? Because the Mahoney case deals with people who want to stand in the streets adjacent to the permit area. They're not in the permit area itself. And if what these guys want to do is stand in the public streets adjacent to the permit areas and quietly express their disagreement, we don't say they can't do that. So if the Reverend Gathright quietly in a whisper expresses his disagreement while standing on the sidewalk, that would be all right? That's all right. But that's not what he does. And we've been prohibiting from dealing with what he does do. I have like about four minutes left and should probably save it for rebuttal unless there are questions you need to hear from first. May it please the court, I'm Herb Gray, appearing on behalf of Edward Gathright. Seated with me at council table is my co-counsel, Kelly Ford. At page 30 of its opening brief, what the city says it wants is a rule of law that, quote, a permit holder can exclude any person from an event for any reason. Well, they said it again today. That's right. Now, what that fails to do is to acknowledge the difference that the court has already touched on between a parade and an event where the public is invited. It also seeks to extend early beyond what it was intended to do. And the way the city has implemented it has developed in the record in this case. What it does is turn First Amendment forum analysis on its head. Well, how about could you, rather than characterizing what they're doing, and I appreciate the passion with which you speak, it's a very interesting and difficult case because, as Judge Bea pointed out, there are two First Amendment interests here, the speaker and the counterspeaker. Correct. So trying to wade our way through this, could you address what we have been discussing with counsel for the city, and that is the circumstance where someone is standing in the middle of the demonstrated, the event, if you will, within the park boundaries and is either, in the case of my hypothetical with the Nazis, or in the case of Mr. Gathright where he is not standing quietly but is screaming and yelling. Could you walk us through your take on those two circumstances? Sure. I think the most illustrative one example of that would be the bite, which occurred after the permanent injunction was in place. And the court needs to understand from the record that the bite is an open situation to which the public is invited. There are a variety of restaurants which serve food there, and during part of the time there is music, and during part of the time it is just people milling around enjoying food and drink. And what the evidence was developed in the district court at the time of the modification of the injunction, it was videotape evidence that showed, first of all, that Mr. Gathright was not screaming and yelling. He was standing in the middle of an open area, and in fact the district judge expressly referenced the videotape. He is standing out there talking. Most of the people walk by. He is not obstructing anyone. And he is just saying what he has to say. And then what occurs is police officers come up to him and say, we would like to move you over here. And he says, you know, I don't need to move over there because there is already an injunction that says I can be here. And they persist in that, and pretty soon there is a multitude of police officers, a multitude of security officials, and then a crowd gathers. And the fundamental problem, and the reason why we deem that to be a violation of the injunction, and I believe it is a violation of the law as well as the injunction, is that it was entirely up to the discretion of the permit holder, the event organizer, to decide they didn't want him there, even though he wasn't causing any problems. And Mr. Gathright's position throughout the case has been, if there is a violation of the disorderly conduct statute, fine, arrest me and deal with me on that basis where I have all the protections of the criminal process. If I am exceeding the noise ordinance, fine, cite me for that, and let's go through the process. What Mr. Gathright objects to, and what this case is really about, is permit holders saying, you know what, one of these guys, who is a friend of Mr. Gathright's, wants to come into our event with Trust Jesus on his hat, and we can't have that. And when they are challenged on the basis for deciding that, they have no rules written down, certainly no rules posted, and they're making an ad hoc determination at that point in time that they don't want someone with Trust Jesus written on their hat. If somebody with Trust Jesus comes in, or Mr. Gathright starts heckling the speaker, let's move back to what I'm trying to understand as the scope of this injunction, as you said. If Mr. Gathright starts heckling a speaker, does the injunction prohibit the speaker's organization from removing him, or ask that he be removed? No. First of all, let me make the point, that's not the record in any of the nine events. I'm asking about the scope, as you're understanding the scope of the injunction. Now, to the extent that it's actually interfering with the program, and a speaker, or a performing musical group, disorderly conduct would permit the removal of Mr. Gathright under those conditions. What about disruptive heckling, which does not rise to disorderly conduct beyond a reasonable doubt before a jury? I'm speculating at what you mean by heckling, Your Honor. Well, he's speaking in a loud enough voice that the people trying to pay attention to the permittees event have their attention distracted. It's as if somebody were talking right now in the courtroom, we would be distracted. It might or might not be disorderly conduct, but it's certainly interfering with our speech rights. Sure. And my response to that would be, even though that's not the issue in this case, the new ordinance that the city presented to you this morning, which is a disruption ordinance, had that ordinance been in place six years ago, in all likelihood, we would not be standing here. Because of subsection A, which says, that substantially prevents any other person from viewing, hearing, or meaningfully participating in the event. Right. But instead, what the city has elected to do throughout the course of this case, and even before this case for that matter, is to say, let's let permittees do whatever they want. We'll back them up. And only now, in 2005, six years after their noninterference ordinance is declared unconstitutional, do they come up with a disruption ordinance they should have had a long time ago. If this ordinance now obtains, the case is moot. Well, the case is not moot because the case is not done in the district court, because we haven't dealt with the damages issues that relate to what's happened to Mr. Gathright up to this point. Is it your position, are you prepared to say that this ordinance takes care of Mr. Gathright's prospective, injunctive type of concern? I'm not prepared to say that we would necessarily agree with all aspects of the ordinance. For example, I note in looking at it, that it prohibits any kind of audio or video recording. And what that suggests to me is that the permit holders would be in a position to confiscate anyone with a camera cell phone. Well, let's just go back to the chase here. I didn't focus until Judge Bea called it to my attention that there was a new ordinance in place. As a practical matter, are you as party, city, and you as counsel to Mr. Gathright prepared to discuss whether you can amicably resolve these issues without forcing an opinion one way or another from this court? We have a mediation option here that we'd be happy to have you voluntarily engage in if you think you can resolve these issues and reach an accommodation that satisfies both parties. If you can't, then there's further to do. Whether or not it moots the case, I see that's the argument made. I don't know whether you can decide that, but we would be interested. I think the panel would like to know where this case is positioned at this point. Not necessarily now, but shortly after. What I would say to the court is that this ordinance represents a massive step in the right direction. It's what should have been in place instead of the city inserting in its permit permits language to the effect that permit holders get to decide whatever rules they want and anybody who disagrees with them is unreasonably interfering with the event. That's what the record shows has happened up to this point. I don't believe that this moots the entire case because I think it's important since this has been a subject of continuing interest throughout the country over the last couple of years. I don't believe that it's helpful to the parties or to the public as a whole not to make a definite decision concerning a determination of how rights are to be handled in this kind of a situation. Because the court needs to remember all of the events that are at issue are events at which the public is invited. We're acutely aware of that. That's why I say I'm not sure whether it's moved or not. We have a case and controversy that's before us. We're not litigating the rights of people across the country. As we've frequently said, litigation is the end of the process. If the parties can find a way to accommodate their differences, they often may be happier. At least one side or the other may be happier. Sometimes they're both happier than what we as judges are then required to come up with. What I can tell the court is that there's been litigation between Mr. Gathright and other of his friends in the city of Portland over these types of issues for 10 years. No, I understand. You have a client. You have to deal with this. And the other thing I would say is that we explored the mediation option when the appeal started. And at that point in time, this wasn't on the table. So now there's been a significant change in the objective correlation of forces. And maybe mediation would be a suggestible alternative. I just mentioned it. I think history has shown that it depends how it plays out on the ground. As I said, we have a program. We have found occasions when it has been quite useful to the parties. This may be such a case. And we would urge that the parties, if there's a hint from us or a suggestion from us, let us know. We may actually issue a request for a formal response. But in any event, why don't you all talk about it when you can. Okay. Again, the fundamental problem that Mr. Gathright's been complaining throughout this case is the whole unfettered discretion issue. And the important thing here is to determine whether or not the city wants to persist in the practice that it engaged in up until the modification of the injunction of actually affirmatively authorizing permit holders to decide what it is they didn't like and then backing them up in that decision. Why is that significant for purposes of this appeal? First of all, that kind of conduct continued on after the issuance of not only the preliminary injunction, but also the permanent injunction. Secondly, the record makes clear that even while the preliminary injunction was in place and at about the same time that the permanent injunction was put in place, the city actually amended its permit form to include a provision, which I've also already referred to, that says in relevant part, persons who refuse to follow permittees rules of conduct will be deemed to have unreasonably interfered with permittees activities. And that occurred after the city had made a representation to the court that it wasn't going to use the unreasonable interference ordinance, which is the precursor to the PCC 20.08.060. The problems that we have is that we haven't gotten to a point where the city acknowledges that they need to focus on law that's been enacted and that they can't just limit anybody who's a member of the public from coming to a public event. And the fundamental fallacy in the city's position and the reason they keep going back to Hurley is that in effect, when the city issues a permit, what occurs at that point in time is a public forum becomes the private province of the permit holders. In other words, even though the city says we're not transforming the forum, it's just that other people temporarily lose their First Amendment rights, that can't be the law. Because the First Amendment does not require that there be an exclusion of other viewpoints in a public place at all times, unless there's a private permit. And Judge Bea made reference to the Mahoney case. And I think that absolutely articulates the analysis that needs to be followed here. If you've got a public place, even though you've got an organized event and some sort of a message, that doesn't mean that you close off the streets and the sidewalks and everything around it. In Mahoney, the people were respectfully standing behind signs with their mouths shut. Well, the issue actually in Mahoney was whether they would be able to do that, because the Park Service issued itself a permit to keep everybody else out so that nobody could do what the court is suggesting. But nobody was volubly expressing their views from the sidelines. Well, we don't know what was intended because the case happened prospectively. And again, as cited to the court, the main authority that the city has relied upon throughout this case have been a series of cases from the Sixth Circuit. And the Sixth Circuit, which is the only circuit that's really spoken on this point up to now, has now basically limited those prior cases in the Parks v. City of Columbus case. And again, I think the Sixth Circuit is absolutely right, and they agree with the decision of this court in the ACLU v. City of Las Vegas case. In Parks, at page 652, the court says, The city cannot, however, claim that one's constitutionally protected rights disappear because a private party is hosting an event that remains free and open to the public. And then the decision goes on to reject the whole idea that they can allow unfettered discretion. And the problem that Mr. Gathright has had all along is addressed in the ACLU v. City of Las Vegas case, where instead of unfettered discretion, what this court has said is that if there are standards to be applied in a public forum, those standards must be, quote, narrowly drawn, reasonable, and definite. And that is what has been lacking up to this point in time. So basically where we come down here is that the city is in a position of saying— I think you have the argument. And if the court has no further questions, I'm happy to sit down. Thank you. Thank you. May it please the court, I'll try to limit myself to just a few brief points. First, I want to be clear on what it is that we believe is moot. What we have suggested to the court is that the enactment of the replacement for Portland City Code, Section 2008.060, moots the injunction as to the enforcement of that ordinance. It doesn't moot the essential underlying question of who has the right to control speech at an event held under permit. With regard to the court's suggestion of mediation, I'm certainly willing to discuss that with my clients and with Mr. Gray. The problem that we have is that we are caught between two forces, neither of which is of our own making, which is the people who want to hold the event, who spend substantial amounts of money to obtain these permits, and to put on their events, and the people who want to come in and speak at their events that they choose not to have. So my sort of pragmatic concern about the mediation, which I'll try to think through somehow, is how we can— We'll think about that. I need to return again to this premise that we can't take any action unless there's some freestanding provision of law that proscribes the conduct that we're trying to deal with. That simply is a false premise. Things happen in the parks all the time that don't necessarily implicate any freestanding provision of law, but that require some kind of interdiction by the parks authorities. There's all kinds of dumb, unsafe, or stupid things that people can do in parks that the answer to which is to have somebody come up and say, hey, you can't do that right here, right now, you have to do something else, rather than to say, I'm going to write a law that makes it specifically inappropriate to do each and every silly thing in a park. But we believe we can do, and that there has been no law cited that prohibits a government from allowing someone who uses its property for a public event to establish rules of conduct specific to that event. There's no law that says that that's unconstitutional. Again, the problem with the injunction in that it is an outright prohibition against our doing that, is that it's not limited to these things as they implicate free speech. We can't allow our permit holders to establish any rules of conduct relevant to their event. And that's simply an abuse of discretion. Yes, in writing the ordinance, we have tried to deal with some of the most predictable things that we think are going to be repetitive problems at events and deal with them in a freestanding ordinance. But we can't, by ordinance, be prescient enough to anticipate what may be a particular concern to a particular event. And if it's not speech-related, it has no right being foreclosed by, no, it's improper to have it foreclosed by an injunction. If it is speech-related, we have to individually address them to determine whether they're reasonable time, place, and manner restrictions on the exercise of speech. And a bottom line, and I think we pointed this out in the briefs, whether or not there have been, well, the record is simply insufficient to support a bribe-based injunction under the standards for this sort of thing that have been established by the law. Thank you for your time. Okay. Thank you, Counsel. This is an important case, and we appreciate both sides talking. Case argue is submitted.
judges: Fisher, Gould, Bea